# Robert C. Watson et al., Plffs. in Err., *v.* Irvine C. Beatty.

A factor or commission merchant has a lien for advances and commissions which he can enforce at any time, in the absence of an express agreement to the contrary, by notice and sale.

A purchaser of the principal's interest does not assume any obligation for the advances.

If at a time when the goods might be sold at such prices as to repay the advances, but the market is falling, the purchaser of the principal's interest requests the factor not to sell at less than somewhat higher prices named in a certain memorandum, and the factor complying with the request thereby loses all chance of selling at prices sufficient to repay the advances, this does not amount to a contract on the part of such purchaser to indemnify the factor for the loss thereby sustained.

(Argued March 27, 1888. Decided April 23, 1888.)

January Term, 1888, No. 234, E. D. All the Judges present. Error to Common Pleas No. 1 of Philadelphia County to review a judgment of compulsory nonsuit in an action of assumpsit, June Term, 1885, No. 161. Affirmed.

This was an action by Robert C. Watson and John M. C. Bartholow, trading as Watson & Bartholow, to the use of Charles D. Wells, their assignee for the benefit of creditors, against Irvine C. Beatty, trading as Irvine C. Beatty & Co.

At the trial before BIDDLE, J., the following facts were proved by the plaintiffs:

Watson & Bartholow, the use plaintiffs, were commission merchants, doing business in New York. Up to November 30, 1883, they had advanced to Isabella Stewart, a manufacturer of Philadelphia, $4,280.26, and had goods of hers in their hands to the value, at then current market rates, of $5,378.92, a margin amply sufficient to have enabled them to realize and make themselves good. On that date they made out and delivered to Isabella Stewart a schedule of goods in their hands, showing the market values of the same, as above. December 18, 1883, Isabella Stewart transferred her said goods to Irvine C. Beatty, the defendant, who thereupon wrote Watson & Bartholow as follows:

Gents:

Inclosed we hand you order of Mrs. Isabella Stewart's, transferring all goods as per your memorandum November 30, 1883, you had on hand that date belonging to her, to us, which please accept and return to us by return mail. Do not sell any of the goods at lower prices than those quoted on your memorandum without our consent, and oblige     Irvine C. Beatty & Co.

Watson & Bartholow accepted the order and transferred Mrs. Stewart's account on their books to Beatty & Co. They afterward sent him accounts current, stating his indebtedness to them, to which he did not demur. Had they sold the goods shortly after the receipt of Beatty's order, or within a considerable time afterward, at obtainable prices, they would have come out whole. The market, however, fell off steadily, and relying on his order, and in compliance with his request therein expressed, they submitted prices to him from time to time, and asked his permission to sell, which he refused. They thus lost their market entirely, and when they finally called on Beatty to make good the account, he declined to do so. They then sold the goods, and suffered a loss of $1,643.10, for which they sued. The trial judge entered a nonsuit, which the court in banc refused to set aside.

The assignment of error specified the action of the court in refusing to set aside the nonsuit entered at the trial.

*Frederick M. Leonard, Walter C. Rodman,* and *William McGeorge, Jr.,* for plaintiffs in error.—The ground of this action is an implied promise by defendant that he would make good any loss plaintiffs should suffer, in complying with his written request, contained in his letter of December 18, 1883.

The law implies, from the silent language of men's conduct and actions, contracts and promises as forcible and binding as those that are made by express words, or through the medium of written memorials. Addison, Contr. 3d Am. ed. § 30.

In general, where an act is done or a service rendered in pursuance of a request, the law will imply a promise to pay what it is worth. Services are ordinarily rendered in the expectation of an equivalent, and an act done on request will not be presumed to have been gratuitous, in the absence of proof. Hare, Contr. 227.

In determining whether such an implied promise exists, the law does not so much consider the intention of the person who receives the benefit, as what the person by whom it is conferred is reasonably entitled to expect. Id. 228.

A request or authority to do an act may, under the circumstances, impliedly offer an indemnity against the consequences of the act to the person doing it, upon which he would be entitled to rely in acting upon the request. Leake, Contr. 54.

A request to a person to undertake an agency or employment, or assume any character or position, the proper execution of which involves the payment of money, operates as if the person had made a distinct request to pay the money, with a promise to repay it. Id. 56.

To enumerate all the cases in which promises have been implied from the acts of a party would be a tedious and unprofitable task. Chitty, Contr. 80.

In the case of an accommodation acceptance or indorsement, there is an implied engagement on the part of the person requesting the accommodation, that he will indemnify the acceptor or indorser to the extent of the sum payable on the bill. Id. 2d Am. ed. 745.

A party who requests another to lend him his acceptance impliedly engages to take up the bill at maturity, and to indemnify the acceptor against the consequences of nonpayment. Reynolds v. Doyle, 1 Mann. & G. 753; Konitzky v. Meyer, 49 N. Y. 571.

If A become surety or bail for B at his request, the law implies a promise by B to indemnify him. Chitty, Contr. 745.

Wherever a person gives a security, by way of indemnity, for another, and pays the money, the law raises an assumpsit. Toussaint v. Martinnant, 2 T. R. 100, 104.

In order to prevent injustice, the law will imply a promise to indemnify, in favor of a surety, against the principal, if none is expressed. Holmes v. Weed, 19 Barb. 128.

Where there is parol demise (by a tenant) to an under tenant, there is an implied promise by the former to the latter, to indemnify him against any distress which may be made by the superior landlord for the rent due him, so long, at least, as the under tenant pays his rent to his immediate landlord. Chitty, Contr. 743-44; Hancock v. Caffyn, 8 Bing. 358.

In Brittain v. Lloyd, 14 Mees. & W. 762, defendant employed plaintiff, an auctioneer, to make a sale,—held, to imply a promise that she would repay him the auction duty, which he was required to pay by the excise commissioners.

The employment of a broker to buy and sell shares operates as a request to make all payments required by the rules of the stock exchange or other share market, in the course or execution of the employment, with a promise to repay the amount. Leake, Contr. 56, and cases cited.

Where one party at another's request does an act injurious to a third party, and is mulcted in damages therefor, a promise of indemnity on the part of the first person is implied.  Dugdale v. Lovering, L. R. 10 C. P. 196.

In Adamson v. Jarvis, 4 Bing. 66, plaintiff, an auctioneer, sold goods for defendant which were really another's; and, on his being sued by the true owner, held that a right of action accrued against defendant for the deceit.

In Humphrys v. Pratt, 5 Bligh N. R. 154, a sheriff, having been mulcted in damages for seizing goods at the direction of a certain plaintiff, sued the latter for the false representation, and recovered, although there was no proof that the plaintiff knew that his representation was false.

In Betts v. Gibbins, 2 Ad. & El. 57, defendants sold ten casks of goods to N., and sent them to plaintiff with instructions to deliver them.  N. took away two, when defendant notified plaintiff to deliver the other eight to another person, which he did, and was in consequence sued in trover.  Held, that defendant was bound to indemnify him his losses thus suffered.

In the present case the plaintiffs were under no obligation to heed the defendant's request; but for that very reason, their compliance gives them a claim upon him.  In the analogous case of forbearance at the request of a third party, the creditor is not bound to forbear; but if he does, he may exact the terms upon which forbearance was asked.  Leake, Contr. 54; Morton v. Burn, 7 Ad. & El. 19; Wilby v. Elgee, L. R. 10 C. P. 497.

There was a good consideration for the implied promise,—a benefit to Beatty, a risk to Watson & Bartholow.  The latter were in possession of consigned goods more than sufficient to have repaid all their advances.  They had a right to sell, at any time, at their own discretion, to reimburse themselves.  Edwards, Factors & Brokers, § 25; Parker v. Brancker, 22 Pick. 40; Frothingham v. Everton, 12 N. H. 239; Marfield v. Goodhue, 3 N. Y. 62, 72.

Neither Mrs. Stewart nor her assignee, Beatty, could have prevented them from so selling, had they seen fit to do so. Blackmar v. Thomas, 28 N. Y. 67, 70; Marfield v. Goodhue, 3 N. Y. 62, 72; Brown v. M'Gran, 14 Pet. 479, 10 L. ed. 550.

They chose, however, to rely on the promise implied in Beatty's request, and, in consequence, lost their market.  Under the cases cited above they have a clear right to be indemnified.

If an agent, in perfecting a sale for his principal, acts'strictly within the line of his duty, and, in good faith and without fault on his part, in the management of the sale he incurs damages, they must be borne by the principal and not by the agent. Maitland v. Martin, 86 Pa. 120.

It is quite immaterial whether the agent have a promise to indemnify him or not; the law implies an agreement on the part of the principal to save him harmless.    2 Sedgw. Damages, 86; Wood's Mayne, Damages, 706, 707; Duncan v. Hill, L. R. 8 Exch. 242; Dos Passos, Stock Brokers, 131; Marten v. Gibbon, 33 L. T. N. S. 561.

*John G. Johnson,* for defendant in error.—While it appeared that Watson & Bartholow were the pledgees to secure advances of certain goods belonging to Mrs. Stewart, the terms of the pledge, and the extent of their power to sell the same, did not appear.    There was nothing in the case to show that as such pledgees they had a right to sell without notice at any price.

The plaintiffs were New York commission brokers, who had made advances.    Marfield v. Goodhue, 3 N. Y. 73, defines their power.

Watson & Bartholow did not agree that they would not sell without Beatty's consent; but, even had they done so, no promise by the latter could therefrom have been implied to pay to them the debt of Mrs. Stewart.

We might concede that Watson & Bartholow had a right to sell Mrs. Stewart's goods at any price without being obliged to concede that Beatty's letter, requesting them not to sell without his consent, imposed any obligation upon him to pay the Stewart debt in case of a deficiency.    Such an obligation would not arise on a positive agreement by plaintiffs not to sell, unless, as a condition of such agreement, they insisted upon such an obligation.    In point of fact, however, there was no such agreement by plaintiffs.    They were at all times at liberty to exercise all right vested in them over the goods.    They never agreed to waive any such right.

PER CURIAM:

There is nothing apparent in this case which requires a reversal of the judgment of the court below.    When the defendant took the assignment from Isabella Stewart, he thereby took

the goods owned by her subject to the lien of the plaintiffs for advances and commissions; but he did not assume her debt to them. Neither was his order, or rather the order of Irvine C. Beatty & Co., not to sell the goods at lower prices than those quoted in the memorandum, such an assumption; for it imposed upon the plaintiffs no new or additional obligation, nor did it in the least abridge their rights in the premises; it was but a request in which they might or might not concur as they thought proper. They could have determined the matter at any time by notifying the defendant to pay advances and take the goods, or, on his refusal so to do, that they would sell them in discharge of the lien. But they cannot now be heard to complain that they voluntarily allowed, on the mere request of the defendant, the means of payment to slip through their fingers by holding the goods until the price had depreciated.

The judgment is affirmed.